UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CALVIN THURMAN,

                          Plaintiff,      **No. 6:16-cv-06082(MAT)**
                                                     **DECISION AND ORDER**
           -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                          Defendant.

---

## INTRODUCTION

Represented by counsel, Calvin Thurman ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff protectively filed applications for DIB and SSI on December 5, 2012, which were denied. (T.81-82, 85-100, 202-09).[2] Plaintiff requested a hearing, which was scheduled to be held via

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

videoconference on October 24, 2014, before administrative law judge Rosanne M. Dummer ("the ALJ"). However, the hearing was postponed until March 16, 2015, at which time Plaintiff appeared with his attorney and testified, as did impartial vocational expert Jacquelyn Schabacker ("the VE"). (See T.40-67). After the ALJ issued an unfavorable decision on March 20, 2015 (T.9-30), Plaintiff requested review by the Appeals Council, which was denied on December 18, 2015, making the ALJ's decision the Commissioner's final decision. (T.1-4). This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal. For the reasons that follow, the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

The ALJ followed the five-step procedure established by the Commissioner for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. (T.14).

At step two, the ALJ found Plaintiff has the following "severe" impairments: major depressive disorder; anxiety disorder; hypothyroidism; and cocaine abuse, cannabis abuse, and alcohol

abuse, all in reported remission. At step three, the ALJ determined that whether considered individually or in combination, Plaintiff's severe impairments did not meet or equal a listed impairment. (T.14-15).

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and determined that he has the ability to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[3] except that he needs to avoid concentrated exposure to work hazards, and, secondary to mental impairments, he can understand, remember, and carry out instructions; sustain attention for simple tasks for extended periods of two-hour segments; tolerate brief and superficial contact with others, and occasional brief and superficial contact with the public; and adapt to changes as needed for routine, repetitive, unskilled work. (T.16-23).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (T.23).

At step five, the ALJ relied on the VE's testimony at the hearing (T.60-66) regarding an individual of the same age, education, and work experience as Plaintiff, who has the RFC assessed by the ALJ, <u>supra</u>. The VE testified that such an individual could perform representative occupations of automobile

---

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If the claimant can do medium work, he can also do sedentary and light work. See 20 CFR § 404.1567(c), 416.967(c).

detailer, dishwasher, general laborer, coffee attendant, sorter, and laundry worker, all of which were at the medium, unskilled level. In addition, the VE testified, such an individual could perform representative occupations of housekeeper/cleaner, photocopy machine operator, and packager, all of which were unskilled, light-exertion work. (T.63-64). The VE further testified that, even if the hypothetical person were off-task for up to 10% of the time, he could perform the same jobs. (T.66). Because there are jobs that exist in significant numbers in the economy that Plaintiff can perform, the ALJ entered a finding of "not disabled."

## DISCUSSION

### I. Failure by the ALJ to Develop the Record (Plaintiff's Point II)

Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and brackets omitted). This duty is present "[e]ven when a claimant is represented by counsel." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009)."[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information. . . ." Rosa v. Callahan, 168 F.3d 72, 79

n.5 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).

Plaintiff contends that the ALJ erred by failing to develop the full record of his psychiatric care with Dr. Gregory Seeger at Rochester Rehabilitation Mental Health Center ("RRMHC"). Plaintiff asserts that the ALJ repeatedly stated in her decision that there was no evidence of a debilitating mental health condition (see T.19-20), but then made no effort to obtain Plaintiff's psychiatric notes with Dr. Seeger. Plaintiff states that the only psychiatric treatment note in the RRMCH records from Dr. Seeger is his treatment note from their December 8, 2014 session. (T.391-93).

According to Plaintiff, it is "clear" there are missing notes, because on October 28, 2014, Licensed Clinical Social Worker Beverly Dodd ("LCSW Dodd") authored a letter indicating that Plaintiff had been a patient at RRMHC since April 23, 2013, when he was put on a waiting list for an initial psychiatric evaluation, which was conducted on July 8, 2014. (T.358). However, in this Court's view, it is far from clear that there are in fact missing records from Dr. Seeger. Moreover, the Court notes that when Plaintiff's attorney submitted the RRMHC records to the ALJ on February 12, 2015, including records from November 10, 2014, through January 30, 2015, he included one treatment note from Dr. Seeger, dated December 8, 2014. (See T.19, 22, 386, 391). Prior to the hearing, the Commissioner sent a notice to Plaintiff and his attorney advising them to submit any additional evidence before the

hearing. (See T.166-71). However, at the hearing on March 16, 2015, Plaintiff's attorney did not indicate that he was awaiting any additional medical records. (See T.43). Plaintiff testified that he saw Dr. Seeger once a month or month-and-a-half; however, the evidence in the record indicates that he missed at least one appointment with Dr. Seeger in August 2014; and, on December 8, 2014, Dr. Seeger instructed Plaintiff to return for follow-up in two months. See Tr. 49, 370, 392. Accordingly, the number of appointments with Dr. Seeger that are actually missing from the record between July 2014 and March 2015 appears to be small. In addition, the treatment note from Dr. Seeger that is in the record is dated December 8, 2014, which is at the midpoint of his treatment, and which was apparently his last visit with Plaintiff before he co-signed the report by Ms. Dodd on February 2, 2015. See Tr. 16, 19, 22, 391-92, 379-85.

Indeed, later in his argument, Plaintiff walks back his assertion that it is *clear* there are missing records, stating, it is "*likely* that there are other notes" from Dr. Seeger. To support this argument, Plaintiff relies on pure speculation. He states that LCSW-R Dodd's treatment notes "generally assume ongoing treatment with Dr. Seeger in that they note only once that [Plaintiff] missed an appointment with Dr. Seeger, and include tidbits such as [LCSW] Dodd encouraging [Plaintiff] to discuss his medications with Dr. Seeger[.]" (Plaintiff's Memorandum of Law ("Pl's Mem.") (Dkt #12-1) at 15-16 (citing T.370, 374)). However, the fact that

Plaintiff missed an appointment with Dr. Seeger does not necessarily mean that he rescheduled the appointment. Nor does the fact that LCSW Dodd counseled Plaintiff to meet with Dr. Seeger prove that Plaintiff actually did meet with Dr. Seeger to discuss his medications.

In short, Plaintiff has failed to establish how any additional treatment notes from Dr. Seeger, assuming that such notes exist, would have altered the ALJ's findings, given the extensive mental health treatment notes already in the record, which the ALJ did consider. See Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished opn.) (rejecting as "baseless" claimant's argument that ALJ failed to supplement the record, where claimant she failed to explain how any specific missing record would have affected the decision on her claim).

**II. RFC Unsupported by Substantial Evidence (Plaintiff's Points I and III)**

**A. Erroneous Weighing of LCSW Dodd's RFC Assessment**

Plaintiff contends that the ALJ erred in his evaluation of the January 30, 2015, RFC assessment by his treating therapist, LCSW Dodd, pointing to the ALJ's failure to specifically acknowledge that the opinion was co-signed by Plaintiff's psychiatrist, Dr. Seeger, on on February 2, 2015. (T.21-22, 380-85). Plaintiff argues that Dr. Seeger's co-signing of LCSW Dodd's opinion renders it an opinion from a treating physician, entitling to deference under the treating physician rule.

Under the Regulations in effect at the time of the ALJ's decision, a treating physician's opinion on the issues of the nature and severity of a claimant's impairments is accorded controlling weight only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). When a treating physician's opinion is not entitled to controlling weight, the ALJ is to consider (1) the examining relationship; (2) the length, nature and extent of the treatment relationship, and frequency of examination; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the source's area of specialization, if any; and (6) other factors brought to the ALJ's attention. See 20 C.F.R. §§ 404.1527(c), 416.927(c). However, the Second Circuit has cautioned that it does not require a "slavish recitation of each and every factor, where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (unpublished opn.) (citing Halloran, 362 F.3d at 31-32 (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed").

Assuming that LCSW Dodd's co-signed report was entitled to the ALJ's application of the treating physician presumption of

-8-

deference, the Court finds that "the substance of the treating physician rule was not traversed." Halloran, 362 F.3d at 32. It is apparent from the ALJ's analysis of LCSW Dodd's report that the ALJ considered most of the same factors set forth in the treating physician regulations, 20 C.F.R. §§ 404.1527(c) and 416.927(c). For instance, the ALJ considered the supportability of the opinion, and the consistency of the opinion with the record as a whole. (T.20-21). Applying the pertinent regulations and legal principles, the Court is able to "deduce that the ALJ considered the treating physician's opinion and explained the consistency of [that] opinion 'with the record as a whole.'" Halloran, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(4)). In particular, the ALJ noted that "routine therapy notes and psychiatric examination did not indicate any debilitating mental health problems[,]" and Plaintiff "was treated conservatively with counseling and medications on a routine basis, in mostly cognitive behavioral management for life stressors." In addition, LCSW Dodd's opinion was somewhat internally inconsistent insofar as she checked a box indicating that Plaintiff would be absent from work approximately four days per month (T.384), but, with regard to ability to perform semi-skilled and skilled work, she opined that Plaintiff was "seriously limited but not precluded" in his ability to deal with the stress of semi-skilled and skilled work, and he had a limited but satisfactory ability to understand, remember, and carry out detailed instructions, and to set realistic goals or make plans

independently of others. (T.383). Moreover, LCSW Dodd stated, Plaintiff had an "unlimited or very good" ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation. (T.383). LCSW Dodd's report also suggests uncertainty about Plaintiff's actual degree of impairment, since she noted that "[d]epressive symptoms and anxiety *may* seriously impair work functioning at this time. Symptoms *may* interfere with concentration and focus." (T.383). As the ALJ noted, it "appears that [LCSW] Dodd's statements were speculative; she noted that the claimant's symptoms 'may' impair work function and it was 'possible' that his psychiatric condition exacerbates pain[.]" Furthermore, as the ALJ observed, LCSW Dodd's report was inconsistent with Dr. Seeger's previous month's examination of Plaintiff on December 8, 2014. During that visit, Plaintiff reported increased anxiety and stated that he was starting to get mildly depressed again, but it was mainly situational insofar he complained primarily about his unsafe living conditions and dangerous neighborhood (for which LCSW Dodd had referred him to housing assistance services on that same day). (See T.19-20, 391, 393). Dr. Seeger's mental status examination revealed that Plaintiff's thought process was characterized by some persistent racing thoughts, his mood was mildly depressed and affect was characterized by some anxiety, but other findings were essentially normal; he had intact recent and remote memory, and good attention

span, concentration, judgment, and general grooming and hygiene. (T.391-92). Dr. Seeger noted that Plaintiff was not a danger to himself or others, and increased his dosage of Celexa, with instructions to follow up in two months. (T.392). The ALJ observed further that "[t]here was no evidence of overt concern by mental health clinicians [LCSW Dodd and Dr. Seeger]; he was only recommended to use cognitive behavioral techniques and begin seeking new living arrangements. Though he alleged medication side-effects at the hearing, the record indicated he complied with medications, had no side-effects, and the medication was effective." The ALJ's conclusion that "[o]verall," Plaintiff did not have a "debilitating physical or mental condition" is supported by substantial evidence.

**B. Erroneous Credibility Assessment**

Plaintiff assigns error to the ALJ's consideration of his criminal history and substance abuse history as detrimental to his overall credibility. The ALJ "note[d] a significant history of cocaine use and incarceration. . . . The history of substance and legal history also do little to enhance the overall credibility of his statements. . . ." (T.22). An ALJ properly may considere a claimant's criminal history and substance abuse in assessing his credibility. See, e.g., Williams v. Comm'r of Soc. Sec., 423 F. Supp.2d 77, 84 (W.D.N.Y. 2006) (ALJ properly considered claimant's criminal history and other factors in assessing claimant's credibility). However, it is error for an ALJ to categorically

-11-

reject a claimant's subjective complaints based on his criminal history or prior substance abuse. See, e.g., Arrington v. Astrue, No. 09-CV-870 A F, 2011 WL 3844172, at *13 (W.D.N.Y. Aug. 8, 2011) ("The ALJ's categorical rejection of [the claimant]'s claims of pain relating to [the claimant]'s right knee impairment on the basis that [the claimant]'s criminal bank robbery conviction rendered [the claimant] without any credibility, was error."), report and recommendation adopted, No. 09-CV-870, 2011 WL 3844164 (W.D.N.Y. Aug. 30, 2011). Here, the ALJ did not categorically reject Plaintiff's subjective complaints on the basis of his prior criminal history and substance abuse, but instead considered other appropriate factors for assessing credibility, such as inconsistencies between Plaintiff's statements. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The ALJ noted that "[t]hough the claimant testified that he has stopped use of all alcohol and illegal substances, records suggest ongoing alcohol and marijuana use[.]" (See T.18, 20, 22, 47, 52, 323, 340). The ALJ also considered other reasons for finding that Plaintiff's subjective statements overstated his limitations, such as LCSW Dodd's repeated referral of Plaintiff vocational rehabilitation and her continued encouragement of him to find work. See Camille v. Colvin, 652 F. App'x 25, 27 n. 2 (2d Cir. 2016) (unpublished opn.) (finding ALJ's attribution of limited weight to treating physician's opinion was supported by substantial evidence including physician's own clinical notes, which included recommendation that claimant

participate in vocational rehabilitation); Poupore v. Astrue, 566 F.3d 303, 305-06 (2d Cir. 2009) (per curiam) (determination that claimant was not disabled was supported by substantial evidence, including report of claimant's treating physician stating that he would be "an excellent candidate for vocational rehabilitation, and capable of performing lighter work"). Moreover, Plaintiff looked for work throughout the relevant period of alleged disability.[4] At a July 2, 2014 appointment with LCSW Dodd, Plaintiff "again talked about getting a job, and reported that he had made some efforts to obtain one through his contacts" and observed that "must have a high paying job, not a job that pays minimum wage." (T.366). LCSW Dodd attempted to help Plaintiff see the discrepancies between what he wanted versus what he was willing to do to get it, but Plaintiff maintained that he was "not going to start all over again." (T.366). LCSW Dodd provided examples of people who had needed to "start over" and had done so successfully; she "continue[d] to encourage him to accept work anywhere." (T.366). It was not error for the ALJ to consider that factors unrelated to his impairments contributed to Plaintiff's unemployment. In addition, the ALJ appropriately considered that Plaintiff's work ended in 2008 due to reasons unrelated to any of his impairments. Plaintiff testified that he last worked in 2008, removing asbestos from buildings and

---

[4]

The Commissioner's "regulations provide that employment 'during any period' of claimed disability may be probative of a claimant's ability to work, 20 C.F.R. §§ 404.1571, 416.971." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) (emphasis in original).

supervising 15 people in performing that task. (T.45). When asked whether he quit or was terminated, Plaintiff responded that the contract ended. (T.45, 323). He further testified that he was supposed to renew his asbestos license every two years, but he was sent to the wrong recertification class; as a result, he lost his license. (T.55-56). Plaintiff was told that he would have to repeat the entire certification program (T.56), which he apparently did not do.

It is well within the discretion of the Commissioner to evaluate the credibility of [P]laintiff's complaints and render an independent judgment in light of the medical findings and other evidence." Williams v. Comm'r of Soc. Sec., 423 F. Supp.2d 77, 84 (W.D.N.Y. 2006) (citing Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984) ("On appeal, the court's proper function is merely to determine whether the appropriate legal standards have been applied and assess whether the Secretary's findings of fact are supported by substantial evidence."); Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996)). Here, in making factual findings regarding the credibility of Plaintiff's subjective complaints, the ALJ did not misstate or mischaracterize the record, and did not misapply the relevant legal principles. Accordingly, the Court may not re-examine the evidence and make its own credibility determination.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally flawed and is based on substantial evidence. Accordingly, it is affirmed. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: May 18, 2017
Rochester, New York.